**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-00888-NYW-NRN

GINO LERNER, and
BRIAN AIGNER,

      Plaintiffs,

v.

MOSES ANDRE STANCIL, in his official capacity,[1]
MICHELLE BRODEUR, in her official capacity,
JOY HART, in her official capacity, and
CHRISTINA ORTIZ-MARQUEZ, in her official capacity,

      Defendants.

---

**ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION**

---

Pending before the Court is the Report and Recommendation on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Rule 12(b)(6) (the "Recommendation"), [Doc. 35, entered February 3, 2023], and Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Rule 12(b)(6) (the "Motion to Dismiss") filed by Defendants Moses Andre Stancil ("the Executive Director"), Michelle Brodeur ("Defendant Brodeur"), Joy Hart ("Defendant Hart"), and Christina Ortiz-Marquez ("Defendant Ortiz-Marquez") (collectively,

---

[1] In their Objections, Defendants represent that Colorado Department of Corrections ("CDOC") Executive Director Dean Williams, a defendant named in the operative pleading, has been substituted with Acting Executive Director Moses Andre Stancil. [Doc. 40 at 1 n.1]. Pursuant to Fed. R. Civ. P. 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Here, Defendant Williams was sued in his official capacity as the Executive Director of CDOC. [Doc. 8 at 1–2]. Thus, Acting Executive Director Stancil is automatically substituted and this Court **ORDERS** the Clerk of the Court to **AMEND** the caption and docket accordingly.

"Defendants"), [Doc. 21, filed August 11, 2022]. The Recommendation concludes that the Motion to Dismiss should be denied. [Doc. 35 at 17]. Defendants filed objections (the "Objections") to the Recommendation. [Doc. 40, filed March 3, 2023]. Plaintiffs filed a response (the "Response to Objections"). [Doc. 41, filed March 14, 2023]. Also pending is Plaintiffs' Second Motion for Appointment of Counsel. [Doc. 31, filed October 18, 2022].

The Court finds that oral argument would not materially assist in the resolution of the issues presented in the Motion to Dismiss or the Recommendation. For the reasons set forth below, the Court respectfully **OVERRULES** Defendants' Objections, **ADOPTS** the Recommendation subject to the analysis herein, **DENIES** the Motion to Dismiss, and **GRANTS** Plaintiffs' Second Motion for Appointment of Counsel.

## BACKGROUND

This action is pending at the motion-to-dismiss stage; as such, the Court takes all well-pleaded factual allegations as true.

## I.   Factual Background

Plaintiffs Gino Lerner and Brian Aigner ("Plaintiffs") are currently in the custody of the Colorado Department of Corrections ("CDOC"). [Doc. 8 at 2–3].[2] Plaintiffs were housed at the Fremont Correctional Facility when they filed this action and are both serving indeterminate sentences.[3] [*Id.* at 6]. Those sentences were issued pursuant to the Colorado Sex Offender Lifetime Supervision Act of 1998 (the "Act" or "SOLSA"). [*Id.*]. According to Plaintiffs, SOLSA requires them to undergo sex-offender treatment as part of their sentences; Plaintiffs also stress that their SOLSA sentences entail indefinite custody until the parole board concludes, among other

---

[2] The Court uses the convention [Doc.___] to refer to the docket entry and page number assigned by the District's Electronic Case Filing ("ECF") system, unless otherwise indicated.

[3] Mr. Lerner has since been transferred to the Bent County Correctional Facility. [Doc. 42].

conditions, that they have "successfully progressed in treatment." [*Id.* (quoting Colo. Rev. Stat. § 18-1.3-1006(1)(a))]. In this action, Plaintiffs claim that CDOC, by and through Defendants, has prevented them from participating in sex-offender treatment through the Sex Offender Treatment and Monitoring Program ("SOTMP"). *See* [*id.*]. Specifically, they allege that SOTMP has "very limited capacity," that CDOC "only offers sex offender treatment at a limited number of facilities," and that Defendants refuse "to transfer inmates for the purpose of obtaining treatment prior to their parole eligibility date." [*Id.* at 6, 8]. They also allege that Defendants "prioritize[] treatment based on a deeply flawed and antiquated system that flouts both the letter and spirit" of the Act. [*Id.* at 6].

Plaintiffs base their claims on a number of specific allegations, all of which prevented their entry into SOTMP. Mr. Lerner was sentenced on or about September 15, 2003, to an indeterminate sentence of 22 years to life imprisonment under the Act. [*Id.* at 10]. Mr. Lerner alleges that, throughout his term of imprisonment, he was transferred to and from several locations. [*Id.*]. He alleges that these facilities did not provide access to SOTMP, and that he was unaware that the program would be unavailable. [*Id.*]. He is "currently housed at the Fremont Correctional Facility and after serving approximately 18 years he has not been provided the opportunity to access or participate in" SOTMP. [*Id.*]. Mr. Lerner filed a Step I grievance requesting treatment on December 24, 2021. [*Id.*]. That request was denied. [*Id.*]. He filed a Step II grievance on January 11, 2022, again "requesting treatment and the opportunity to participate in" SOTMP. [*Id.*]. He received a response from Defendant Ortiz-Marquez on January 19, 2022, denying his request and noting that "he was on the 'Global Referral List for SOTMP.'" [*Id.* at 10–11]. On January 21, 2022, Mr. Lerner filed a Step III grievance, again requesting treatment. [*Id.* at 11]. His request for relief was denied on March 3, 2022. [*Id.*]. On March 5, 2022, Mr. Lerner contacted former

Executive Director Dean Williams, and Defendants Brodeur and Hart, "pleading for access to the SOTMP to attempt to obtain some measure of relief." [*Id.*].  He alleges that he did not receive any response.  [*Id.*].

Mr. Aigner was sentenced to an indeterminate sentence of six years to life imprisonment under the Act on or about November 12, 2019.  [*Id.*].  He was incarcerated at the Crowley Correctional Facility, which is operated privately by "CoreCivic."  [*Id.*].  Mr. Aigner alleges he was not aware—and that no Defendant made him aware—that SOTMP would not be offered at the Crowley Correctional Facility.  [*Id.*].  He also claims that he had "no opportunity to be heard or seek review of his assignment" to that facility.  [*Id.*].  At some point, Mr. Aigner was transferred to the Fremont Correctional Facility, but "has not been provided the opportunity to access or participate in the SOTMP sex offender treatment," which "he needs to become eligible for release on parole."  [*Id.* at 11–12].  On March 24, 2022, Mr. Aigner filed a Step I grievance regarding his access to the SOTMP program.  [*Id.* at 12].  According to the Amended Complaint, he has not received a response.[4]  [*Id.*].

"To date, neither Mr. Lerner or Mr. Aigner has not [sic] received notice, an opportunity to be heard, or a meaningful periodic review regarding the refusal of CDOC and the Defendants to provide" either Plaintiff "access to the SOTMP."  [*Id.*].  They have both been denied parole three times "because they had '[i]nadequate treatment participation/progress.'"  *See* [*id.* at 13].  Indeed, Plaintiffs allege that, at their most recent parole hearings, they were denied parole solely because of this factor.  [*Id.* at 6–7].  Plaintiffs also allege that the benefits of enrollment in SOTMP extend beyond parole eligibility, "including, without limitation, the benefits associated with receiving

---

[4] According to CDOC forms filed by Plaintiffs, Mr. Aigner ultimately received a response denying his Step I grievance, as well as responses denying subsequent Step II and Step III grievances.  *See* [Doc. 9 at 6–8].  Any inconsistency between those forms and the Amended Complaint is immaterial.

appropriate and therapeutic clinical services that are routinely provided to SOTMP participants but [are] being denied to Mr. Lerner and Mr. Aigner." [*Id.* at 13]. Both Plaintiffs aver that they "stand[] ready to actively engage in treatment should they be provided the opportunity to participate in the SOTMP." [*Id.*]. Plaintiffs allege that, according to CDOC, their participation in SOTMP is governed by their placement on a "Global Referral List" maintained by CDOC. *See* [*id.* at 12].

Plaintiffs raise two due process claims, both premised on "a liberty interest in their ability to access sex offender treatment consonant with" the Act. [*Id.* at 14–15]. First, they allege that Defendants have violated their procedural right to due process under the Fourteenth Amendment. They claim that Defendants have deprived them "of the opportunity to participate in sex offender treatment without notice, without an opportunity to contest the deprivation of treatment, and without meaningful periodic review of their deprivation of treatment." [*Id.* at 14]. Second, they allege that Defendants have violated their substantive right to due process under the Fourteenth Amendment. They claim that Defendants have "knowingly and willfully implement[ed] and enforc[ed] a policy and practice of arbitrarily depriving some offenders of statutorily-mandated treatment despite actual knowledge that such deprivation" would make them "ineligible for parole," which would cause them to "unnecessarily languish in prison indefinitely." [*Id.* at 15]. To that end, Plaintiffs allege that the Global Referral List—which purports to prioritize treatment for certain individuals based upon, but not limited to, their parole eligibility date, risk of sexual recidivism, prior SOTMP treatment opportunities, and institutional behavior—is "effectively a sham." [*Id.* at 9].

## II.    Procedural Background

Plaintiffs, proceeding pro se, initiated this action on April 13, 2022.  *See* [Doc. 1].  This matter was originally assigned to the Honorable Gordon P. Gallagher.  [Doc. 6].  It was reassigned to the Honorable N. Reid Neureiter on June 10, 2022.  [Doc. 12].  Defendants filed their Motion to Dismiss on August 11, 2022.  [Doc. 21].  On August 19, 2022, this matter was assigned to this Court as presiding judge, but remained referred to Magistrate Judge Neureiter for all motions. [Doc. 24; Doc. 26].

*Recommendation of the United States Magistrate Judge.*    On February 3, 2023, Magistrate Judge Neureiter issued his Recommendation on the instant Motion to Dismiss, in which he recommended denying Defendants' Motion to Dismiss.  [Doc. 35 at 17].  Judge Neureiter recognized that Plaintiffs conceded that they did not plead a deprivation of a federally created liberty interest, so any liberty interest protected by due process had to arise under a Colorado statute.  [*Id.* at 8].  Judge Neureiter concluded that Plaintiffs have a liberty interest in "access to the SOTMP," which is a statutory requirement under Colorado's SOLSA; declined to further narrow the liberty interest at issue; and held that liberty interest created both procedural and substantive due process rights.  *See generally* [*id.* at 11].

Judge Neureiter then turned to considering whether Plaintiffs had adequately pleaded violations of their due process rights.  Judge Neureiter recognized that, to the extent that Plaintiffs allege that they had suffered an unconstitutional deprivation solely because they had not had access to SOTMP prior to their parole eligibility date, such a claim failed.  [*Id.* at 12].  But Judge Neureiter noted that Colorado had promulgated an administrative regulation, AR 700-19, to set out the criteria for SOTMP eligibility, and developed a Global Referral List to rank inmates eligible for SOTMP based on AR 700-19.  [*Id.* at 13].  In reviewing the Amended Complaint, Judge Neureiter

found that Plaintiffs had pleaded that they had been arbitrarily assigned to facilities that do not offer SOTMP; that Defendants refused to transfer them to a facility that provided SOTMP; that they had no means by which to seek review of their housing assignment and its impact on their ability to obtain mandatory treatment; and that the Global Referral List was not being implemented in a manner consistent with AR 700-19.  [*Id.* at 14–16].  He noted that "CDOC faces budget constraints and does not have the ability or capacity to immediately provide rehabilitative treatment to all inmates requiring sex offender treatment."  [*Id.* at 16].  But he reasoned that discovery could shed light upon whether the Global Referral List had treated Plaintiffs properly, and concluded, at the motion-to-dismiss stage, that such allegations were sufficient to defeat a motion to dismiss for both procedural and substantive due process claims.  [*Id.*].

*Defendants' Objections.*  Defendants objected to the Recommendation, arguing that the Recommendation errs in finding that Plaintiffs have a protected liberty interest in access to SOTMP under Colorado law.  [Doc. 40 at 3].  While Defendants concede that Plaintiffs are required to undergo treatment as part of their sentences, Defendants reason that because the Colorado parole statute does not create a constitutionally protected liberty interest in the expectancy of parole, there can be no constitutionally protected liberty interest in treatment that is a prerequisite to parole.  [*Id.*].  Defendants further argue that SOLSA does not create a liberty interest because it does not create a non-discretionary right to parole before a sex offender's sentence runs its full term.  [*Id.* at 6].  In so arguing, Defendants distinguish the factual circumstances of this case with those cited by Judge Neureiter, i.e., *Beebe v. Heil*, 333 F. Supp. 2d 1011 (D. Colo. 2004), and *Tillery v. Raemisch*, No. 16-cv-00282-WJM-STV, 2018 WL 4777411 (D. Colo. Oct. 3, 2018)—two cases in which courts in this District concluded that incarcerated plaintiffs were entitled to due process protections before treatment could be revoked or withheld.

7

*See* [Doc. 40 at 7–10]. Accordingly, Defendants contend that both the procedural and substantive due process claims brought by Plaintiffs should be dismissed for want of a liberty interest in accessing SOTMP. [*Id.* at 3, 7]. The Objections do not challenge Judge Neureiter's conclusion that the Amended Complaint adequately pleads procedural and substantive due process violations, to the extent such interest exists.

**Plaintiffs' Response.** In their Response to Objections, Plaintiffs argue that, under SOLSA, all sex offenders must participate in sex-offender treatment as part of their sentence. [Doc. 41 at 5 (citing *People v. Manaois*, 488 P.3d 1099, 1103 (Colo. 2021))]. They further argue that because both Plaintiffs were sentenced under SOLSA, and because sex-offender treatment is mandatory under the Act, they must be in sex-offender treatment to be eligible for parole, and withholding such access changes their status from being eligible to be "considered" for parole to becoming ineligible to be "considered" for parole. [*Id.* at 6]. Plaintiffs contend that the circumstances before this Court are squarely within the confines of *Beebe* and *Tillery*, neither of which was appealed.[5] [*Id.* at 6–7].

## LEGAL STANDARDS

### I.    Motion to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir.

---

[5] Plaintiffs further rely upon a CDOC Memorandum issued on or about October 24, 2018, to support their argument that they possess a liberty interest in access to SOTMP, and argue that Rule 72(b)(3) permits a district judge to receive further evidence. [Doc. 41 at 7–8]. This Court respectfully declines to consider such Memorandum that was not before Judge Neureiter, as there is no explanation as to why it was not raised in the context of Plaintiffs' Response to the Motion to Dismiss. *See generally* [Doc. 29].

2010) (omission in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible").  The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.      Standard of Review

### A.      Pro Se Litigants

First, the Court notes that both Plaintiffs in this matter are proceeding pro se.  As such, the Court affords their filings a liberal construction.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  That said, it is not this Court's function "to assume the role of advocate for the pro se litigant." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  Plaintiffs' pro se status does not exempt them from complying with the procedural and substantive rules that govern all claims.  *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

B.      **Magistrate Judge Recommendation**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Because Defendants' Objections are limited to whether there is a constitutionally protected liberty interest in access to, or participation in, sex-offender treatment, *see generally* [Doc. 40], this Court also limits its analysis accordingly. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (holding that, in the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a [magistrate judge's] factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). Notably, in their Motion to Dismiss, Defendants had limited the liberty interest issue to whether Plaintiffs have a liberty interest in accessing treatment "outside of the prioritization process set forth in AR 700-19" or "at a time of their choosing." [Doc. 21 at 5 n.2]. At the time, Defendants "express[ed] no view" on whether Plaintiffs have a "liberty interest in participating in the SOTMP *at all*." [*Id.*]. Indeed, Judge Neureiter noted that Defendants did not argue, in the underlying briefing on the Motion to Dismiss, that Plaintiffs do

not have a liberty interest in treatment. *See* [Doc. 35 at 11]. Only after Judge Neureiter disagreed with Defendants' framing did they expand their liberty interest argument in the Objections, now taking the position that "[t]he Recommendation errs in finding that Plaintiffs have a protected liberty interest in access to SOTMP treatment under Colorado law." [Doc. 40 at 3].

Arguably, Defendants' reframed arguments are not properly before the Court. Nevertheless, due to the significance of the inquiry, the Court will substantively address the presence of a liberty interest in accessing treatment and reviews this part of the Recommendation de novo. *See Barron v. Nafziger*, No. 07-cv-01331-CMA-KMT, 2009 WL 1033776, at *1 (D. Colo. Apr. 15, 2009) (observing that "[a]n objection is sufficiently specific if it enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute" and noting that "[i]f objections are . . . made improperly, the Court has discretion to review the recommendation under whatever standard it deems appropriate") (quotation and citations omitted)). Defendants' Objections do not challenge Judge Neureiter's conclusions that the Amended Complaint adequately alleges violations of Plaintiffs' procedural and substantive due process rights, *see* [Doc. 35 at 12–16], so the Court reviews those determinations only for clear error. *See Summers*, 927 F.2d at 1167. Reading the Amended Complaint liberally and drawing all inferences in Plaintiffs' favor, the Court finds no clear error, and **ADOPTS** this aspect of the Recommendation.

## ANALYSIS

## I.     Motion to Dismiss

The Court concludes that Colorado law vests SOLSA inmates with a liberty interest in the opportunity to access sex-offender treatment. That liberty interest triggers due process protections,

so the Objections disputing the existence of a liberty interest are respectfully **OVERRULED**.  The Court **ADOPTS** Judge Neureiter's Recommendation, subject to the following analysis.

### A.        Liberty Interests under the Due Process Clause

The Fourteenth Amendment to the United States Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV, § 1.  Its Due Process Clause "confers both substantive and procedural rights." *Albright v. Oliver*, 510 U.S. 266, 272 (1994).  "Procedural due process ensures the state will not deprive a party of [a liberty interest] without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of [a liberty interest] for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  Thus, "to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible [liberty] interest." *Id.*

There is no dispute that there is no federally-created liberty interest in access to sex-offender treatment. *See* [Doc. 35 at 8; Doc. 29 at 4].  Nevertheless, "state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994) (quoting *Vitek v. Jones*, 445 U.S. 480, 488 (1980)); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (liberty interests "may arise from an expectation or interest created by state laws or policies").  A state-created liberty interest arises from "a legitimate claim of entitlement" and not from an "abstract need or desire" or from "a unilateral expectation." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  "State-created liberty interests are found only under limited circumstances." *Baer v. Heil*, No. 10-cv-02511-REB-BNB, 2011 WL 4479202, at *4 (D. Colo. Aug. 3, 2011).

In the prison context, the Due Process Clause safeguards "only a narrow range of protected liberty interests." *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (quotation omitted).  The Supreme Court has held that

> [s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (citations omitted).  *Sandin* directs courts to consider the nature of a restraint and whether it has caused the inmate to suffer a "grievous loss" of liberty retained even after imprisonment.  *Id.* at 480 (quotation omitted).  In addition, "[a]lthough the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (quotation and emphasis omitted).  "Resolution of the federal issue begins, however, with a determination of what it is that state law provides." *Id.*  The Court turns to what state law provides.

### B.    Liberty Interest in Sex-Offender Treatment Under State Law

According to the Colorado General Assembly and the Colorado Supreme Court, treatment is essential to any SOLSA sentence.  Recognizing the critical relationship between sex-offender treatment and SOLSA custody under Colorado law, and considering the consequences of treatment's absence, the Court finds that inmates sentenced under SOLSA, such as Plaintiffs, are entitled to the opportunity to receive sex-offender treatment during incarceration.  A liberty interest in sex-offender treatment is therefore created by operation of state law, implicating due process

protections.  The Court reaches this conclusion based on SOLSA's text, as well as the Colorado

Supreme Court's analysis of both the statute and the Colorado General Assembly's intent.[6]

The Colorado Supreme Court has recognized that SOLSA is a statutory scheme that is

"fundamentally different" from others under Colorado law.  *See Manaois*, 488 P.3d at 1103.

"SOLSA is a stand-alone sentencing scheme aimed at achieving specific objectives related to sex

offenses."  *Id.* at 1111.  One of its principal objectives, evinced throughout the statutory text, is

ensuring sex-offender treatment for sex offenders.  Indeed, in promulgating the Act, the Colorado

state legislature declared:

> The general assembly hereby finds that the majority of persons who commit sex
> offenses, if incarcerated or supervised without treatment, will continue to present a
> danger to the public when released from incarceration and supervision.  The general
> assembly also finds that keeping all sex offenders in lifetime incarceration imposes
> an unacceptably high cost in both state dollars and loss of human potential.  The
> general assembly further finds that some sex offenders respond well to treatment
> and can function as safe, responsible, and contributing members of society, so long
> as they receive treatment and supervision.  The general assembly therefore declares
> that a program under which sex offenders may receive treatment and supervision
> for the rest of their lives, if necessary, is necessary for the safety, health, and welfare
> of the state.

Colo. Rev. Stat. § 18-1.3-1001 (emphasis added).  Based on this language, the *Manaois* court

observed that "SOLSA's centerpieces are treatment and supervision."  *Manaois*, 488 P.3d at 1109.

The General Assembly's intent points in the same direction.  *See id.* at 1113 (finding that "part of

the legislative intent in SOLSA" is "to provide sex offenders the most appropriate treatment"); *see*

---

[6] The Court's conclusion does not mean that an inmate who does not have the opportunity to access
sex-offender treatment has been unconstitutionally deprived of due process.  Nor should it suggest
that an inmate has an unfettered or unconditional right to access sex-offender treatment.  All it
means is that a liberty interest subject to due process protections exists.  The process that is due if
that interest is deprived or otherwise impeded is not before the Court on Defendants' limited
Objections, so the Court's discussion should not be read to suggest that Defendants' procedures,
such as AR 700-19 or the Global Referral List, are inadequate.  Indeed, the Court agrees with
Judge Neureiter that practical issues of budget constraints and program capacity will likely be
relevant to, if not dispositive of, the due process inquiry, which the Court does not reach today.
*See* [Doc. 35 at 13, 16].

*also Vensor v. People*, 151 P.3d 1274, 1278 (Colo. 2007) ("[T]he legislature's intent [was] to provide for treatment and extended supervision, rather than to punish sex offenders with terms of incarceration longer than those of other felons of the same class.").

The Colorado Supreme Court has explained that SOLSA enacts a "comprehensive sentencing scheme." *Manaois*, 488 P.3d at 1110 n.11.  Under that scheme, Colorado sex offenders receive an indeterminate sentence with a minimum term of years (which is tied to the presumptive sentencing range for the felony level of the offense) and a maximum term of life.  *See Diaz v. Lampela*, 601 F. App'x 670, 672 n.1 (10th Cir. 2015) (citing *Vensor*, 151 P.3d at 1276).  Colorado law requires sex offenders to serve the minimum sentence.  *See id.*  But after the minimum sentence, the implementation of the remainder of the sentence is left to the determination of the parole board.  *Id.*  Sex-offender treatment is essential to both imprisonment of, and parole determinations for, inmates sentenced under SOLSA.

Treatment is vital to the custodial component of a SOLSA sentence.  *See* Colo. Rev. Stat. § 18-1.3-1004(3) ("Each sex offender sentenced pursuant to this section shall be required as a part of the sentence to undergo treatment to the extent appropriate.").  Under the Act, each adult sex offender is required, as part of any sentence to incarceration, "to undergo treatment to the extent appropriate" to such offender based on the recommendations made in his or her presentence or probation investigation, *see* Colo. Rev. Stat. § 16-11.7-104, or based on the subsequent recommendation by the department of corrections, the judicial department, the department of human services, or the division of criminal justice.  Colo. Rev. Stat. § 16-11.7-105.  Sentencing judges lack discretion to stray from this framework.  *See Manaois*, 488 P.3d at 1106.  "While the statute does vest some degree of discretion in the Colorado Department of Corrections, that discretion is not as to whether a sex offender should receive treatment; rather, it is as to what kind

of treatment is 'appropriate' for the offender." *Beebe*, 333 F. Supp. 2d at 1016; *but see Doe v. Heil*, 533 F. App'x 831, 842 n.9 (10th Cir. 2013). Considering the foregoing provisions, the Colorado Supreme Court has identified "the legislature's philosophy that treatment is necessary during imprisonment to minimize the risk to the community when a sex offender reenters society." *Manaois*, 488 P.3d at 1110.

Treatment is just as vital to the possibility of parole for SOLSA inmates serving indeterminate sentences. Under SOLSA, sex offenders remain incarcerated until the parole board determines that the offender has "successfully progressed in treatment" and no longer poses an "undue threat" to society if treated and monitored appropriately. Colo. Rev. Stat. § 18-1.3-1006(1)(a). "[T]he state parole board considers various 'progress in treatment' criteria—defined by administrative regulation—to determine whether a sex offender may appropriately be released from incarceration." *Conkleton v. Raemisch*, 603 F. App'x 713, 715 (10th Cir. 2015) (citing Colo. Rev. Stat. § 16-11.7-103(4)(f)). Ultimately, the grant or denial of parole is left to the discretion of the parole board. *Diaz*, 601 F. App'x at 676. That said, "all sex offenders must progress in sex-offense-specific treatment to be eligible for parole." *Manaois*, 488 P.3d at 1112. Parole is never guaranteed, of course, and neither is making progress in treatment. However, the inability to access treatment does guarantee that parole will be denied. *Cf. Sandin*, 515 U.S. at 487.

Considering the unique circumstances SOLSA presents, courts within this District have previously interpreted the statute as mandating sex-offender treatment. *See, e.g.*, *Beebe*, 333 F. Supp. 2d at 1016 ("[C]onfinement and treatment are inextricably linked." (quotation omitted)); *Allen v. Clements*, 930 F. Supp. 2d 1252, 1264 (D. Colo. 2013) ("SOLSA creates a liberty interest in treatment because it both mandates treatment and conditions parole on progressing successfully

through treatment.")[7]; *Tillery*, 2018 WL 4777411, at *6 ("By its plain language, SOLSA contemplates treatment as an integral part of sex offender incarceration and supervision."). The Tenth Circuit has made the same observation in dicta. *See Walker v. White*, 630 F. App'x 779, 781 n.2 (10th Cir. 2015) (SOLSA "requir[es] persons convicted of sex offenses to undergo appropriate sex offender treatment."). As Judge Neureiter states in his Recommendation, "Colorado has created a scheme in which a sex offender is required to undergo treatment and the CDOC lacks discretion to withhold treatment." [Doc. 35 at 9].

This Court agrees. The Act mandates sex-offender treatment, which creates a "legitimate claim of entitlement" to that treatment by SOLSA inmates like Plaintiffs. *See Bd. of Regents of State Colls.*, 408 U.S. at 577; *see also Sutton v. Mikesell*, 810 F. App'x 604, 611 (10th Cir. 2020) ("State law creates such an entitlement if 'the asserted right to property or liberty is *mandated* by state law when specified substantive predicates exist.'" (quoting *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012))). That, in turn, creates a liberty interest for due process purposes. *See Wilkinson*, 545 U.S. at 222; *see also Firth v. Shoemaker*, 496 F. App'x 778, 788 (10th Cir. 2012) (CDOC employee defendants conceding "a protected liberty interest . . . in the ability to participate in mandatory SOTMP treatment"). This Court deviates slightly from *Beebe* and *Tillery*, which reached similar conclusions, in its reasoning. While those courts rooted the liberty interest in treatment's effect on parole and parole eligibility, this Court roots the liberty interest in the loss of treatment that is contemplated as SOLSA's "centerpiece." *See Manaois*, 488 P.3d at 1109. Without treatment, the conditions of SOLSA confinement are fundamentally and irretrievably

---

[7] The *Allen* court ultimately concluded that the operative complaint did not allege any plaintiffs were awaiting initial enrollment in sex-offender treatment and thus did not include a robust discussion of the associated liberty interest. *See Allen*, 930 F. Supp. 2d at 1265–66.

altered: the inmate loses a segment of the sentence which the General Assembly deemed necessary and appropriate to punishment, rehabilitation, and reentry into society at large.

Additionally, the Court concludes that *Sandin*'s requirements are satisfied here.[8]   As a general matter, the Court takes *Sandin* to narrow liberty interests in the carceral context to ensure prison administrability and limit judicial intervention.   *See Sandin*, 515 U.S. at 482–83. Nonetheless, SOLSA's unambiguous guarantee of sex-offender treatment is no ordinary or incidental regulatory entitlement of the sort dismissed in *Sandin*, like a tray lunch or a paperback book.   *See id.* at 483.   Rather, it resides at the core of what the Colorado Supreme Court has recognized is "an intricate and stand-alone sentencing scheme . . . that was enacted to address sex-offense-specific challenges."   *Manaois*, 488 P.3d at 1103.   By law, a SOLSA sentence of incarceration necessarily consists of both custody and treatment.   *See id.* at 1106 ("[S]entencing courts lack inherent authority to sentence and must thus exercise their sentencing discretion 'only to the extent permitted by statute.'" (quoting *Allman v. People*, 451 P.3d 826, 833 (Colo. 2019))). In some ways, indeterminate SOLSA custody is premised on the possibility of treatment, as custody persists until progress in treatment is made.   *See* Colo. Rev. Stat. § 18-1.3-1006(1)(a). Custody without treatment unilaterally deprives an inmate of the right to pursue the very rehabilitation that the legislature has made indispensable to his sentence.   Under *Sandin*, SOLSA confinement without treatment thus effects an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *See Sandin*, 515 U.S. at 484; *see also Al-Turki v. Tomsic*, 926 F.3d 610, 616–17 (10th Cir. 2019) (evaluating the "ordinary incidents of prison life"

---

[8] It is unclear exactly how *Sandin*, which focuses on negative liberty like freedom from restraint, maps onto a non-custodial positive entitlement like sex-offender treatment under SOLSA.   *See Wilkinson*, 545 U.S. at 223; *see also Al-Turki v. Tomsic*, 926 F.3d 610, 616 n.4 (10th Cir. 2019) (observing that "requiring a prisoner to show both that state law has created an entitlement through discretion-cabining language and that he meets the *Sandin* test makes good sense," but not reaching the issue).

by reference to "the normal limits or range of custody which the conviction has authorized the State to impose" (quotation omitted)).

Granted, not all SOLSA inmates will progress in treatment, just as not all SOLSA inmates will be willing to enter treatment in the first place. *See Doe*, 533 F. App'x at 842 (no liberty interest in continued sex-offender treatment where inmate "refuse[d] to abide by generally applicable requirements for program participation"); *see also Allen*, 930 F. Supp. 2d at 1264 ("[T]he right to treatment is not absolute or unconditional."). And Defendants are correct that ultimately, the parole board retains discretion to grant or deny parole as they see fit—regardless of whether a particular individual has participated in treatment or how they have performed in treatment. *See* Colo. Rev. Stat. § 18-1.3-1006(1)(a). But SOLSA assures inmates of the right to obtain treatment, should they seek it. *See* Colo. Rev. Stat. § 18-1.3-1004(3). Incarceration under SOLSA without the opportunity to access treatment alters the conditions of an inmate's confinement in a way that can only set back his rehabilitation. For that reason, an inmate subjected to SOLSA custody without the opportunity to obtain treatment suffers a "grievous loss" of liberty retained after imprisonment. *See Sandin*, 515 U.S. at 480. Such an inmate has been deprived of a component of his sentence which, in Colorado's view, is part and parcel of every SOLSA offender's sentence, and without which incarceration may well be extended indefinitely. *See Manaois*, 488 P.3d at 1112. In that sense, the inmate has been subjected to a harsher sentence than was handed down by the sentencing judge pursuant to the Act. That situation presents, in this Court's view, a "dramatic departure from the basic conditions of [a SOLSA offender's] indeterminate sentence." *Sandin*, 515 U.S. at 485; *see also id.* at 486 n.9 (referencing whether "the conditions suffered were expected within the contour of the actual sentence imposed").

To the extent the *Sandin* framework applies to state-created positive liberty interests like sex-offender treatment, the Court concludes that this is the rare case where it is satisfied. That is so not simply because state law creates a mandatory entitlement to treatment for sex offenders— which it does—but because of the ways in which state law connects that entitlement to the purpose and nature of an offender's sentence and the essential conditions of the offender's confinement. For the avoidance of doubt, the Court reaches the foregoing conclusions not through its own determination of the efficacy of sex-offender treatment as a general matter, but solely because of how Colorado statutes, as interpreted by the Colorado Supreme Court, create and define a SOLSA sentence. The Colorado Supreme Court has stated, unequivocally, that "SOLSA's centerpieces are treatment and supervision." *Manaois*, 488 P.3d at 1109. The statutory text is just as straightforward. *See* Colo. Rev. Stat. § 18-1.3-1004(3). Recognizing that relationship, and having considered the "totality of conditions" presented by Plaintiffs' factual allegations in the Amended Complaint, *see Rezaq*, 677 F.3d at 1012, the Court concludes that state law creates a protected liberty interest in sex-offender treatment for SOLSA inmates. Here, Plaintiffs allege that they have not received the opportunity to access sex-offender treatment through SOTMP because the Global Referral List does not comply with AR 700-19.[9] Whether that is true, or whether it violates the

---

[9] The Amended Complaint lacks specific factual allegations regarding *how* the Global Referral List does not comply with AR 700-19. *See generally* [Doc. 8]. But the Court notes that Plaintiffs proceed pro se and there is a significant asymmetry in access to information regarding the functioning of the Global Referral List between Plaintiffs and Defendants. Here, this Court only considers whether the Amended Complaint is sufficient to "cross the federal court's threshold." *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011). When it comes to alleging a liberty interest, the Amended Complaint suffices. Of course, the recognition of a liberty interest is a necessary, but insufficient, element in both procedural and substantive due process claims. Further consideration at summary judgment or at trial will rely upon evidence, rather than well-pleaded factual allegations. Accordingly, this Court expressly does not pass on whether Plaintiffs can prevail on the merits of either their procedural or substantive due process claims.

Due Process Clause, is not currently before the Court, but the Court agrees with the Recommendation that Plaintiffs have adequately alleged a liberty interest.

### C.      Defendants' Objections

Defendants' Objections to the Recommendation do not convince the Court otherwise. Defendants primarily argue that "[t]he Colorado parole statute does not create a constitutionally protected liberty interest in the expectancy of parole, and it follows that, without a protected liberty interest in expectancy of parole, there can be no constitutionally protected liberty interest in treatment that is a prerequisite to parole." [Doc. 40 at 3].  Respectfully, the Court agrees with the premise, but not the conclusion.

It is well-settled that "SOLSA does not create a liberty interest in parole of sex offenders" and therefore "due process is not implicated in the denial of parole under SOLSA." *Diaz*, 601 F. App'x at 677; *see also Conkleton*, 603 F. App'x at 716 ("Because Colorado's parole scheme for sex offenders is discretionary . . . [p]laintiff does not have a constitutionally protected liberty interest in being granted parole or in receiving a favorable parole certification or recommendation.").  But Plaintiffs do not solely rely on a liberty interest in parole to claim a liberty interest in treatment.  *See* [Doc. 29 at 11].  Plaintiffs also rely on the Act, which the Court has concluded creates a liberty interest in the opportunity to receive treatment.  The Court therefore disagrees with Defendants' suggestion that a liberty interest in treatment is merely "a liberty interest in a path toward the possibility of parole."  [Doc. 40 at 5].  The connection between treatment and parole eligibility is certainly relevant to understanding the importance SOLSA places on sex-offender treatment, but it is not the sole or primary reason the Court finds a liberty interest.  As discussed above, the Court parts ways with *Beebe* and *Tillery* in this regard.

Defendants' arguments that the Court should decline to follow or extend *Beebe* or *Tillery* need not be addressed separately.  [*Id.* at 7–10].

Defendants' related argument that Plaintiffs have no liberty interest in treatment because treatment will not "inevitably affect" their sentences, [*id.* at 7], is also misplaced as it focuses on the duration of Plaintiffs' sentences, rather than upon the conditions of confinement.  SOLSA requires treatment as part of a sentence of incarceration, which the Court has found creates a liberty interest, so custody without treatment is a deprivation of that interest.  The Objections, which are limited to the existence of a liberty interest in accessing sex-offender treatment for the purposes of parole, are therefore respectfully **OVERRULED** and the Recommendation is **ADOPTED**.  The Motion to Dismiss, which had limited its liberty-interest argument to the timing of treatment, [Doc. 21 at 5 n.2], is **DENIED**.  *See Elliott*, 675 F.3d at 1245 (referencing "confusion between what is a liberty interest and what procedures the government must follow before it can restrict or deny that interest"); *see also Moya v. Garcia*, 895 F.3d 1229, 1241–42 (10th Cir. 2018) (McHugh, J., concurring in the result in part and dissenting in part).

In so ruling, the Court holds only that a liberty interest in the opportunity to access treatment exists.  Such a holding does not mean the interest is unfettered, such that any deprivation becomes a constitutional problem.  The only effect of the Court's holding is ensuring that any deprivation of the interest comports with both procedural and substantive due process, which entail different analyses, from this one and each other, that are not before the Court on the instant Motion to Dismiss.

## II.       Motion to Appoint Counsel

Finally, the Court turns to Plaintiffs' Second Motion for Appointment of Counsel.  [Doc. 31].[10]  Although Plaintiffs have ably proceeded pro se to this juncture, this Court concludes, in its discretion, that the appointment of counsel is warranted.  *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).  In evaluating "the merits of a [litigant's] claims, the nature and complexity of the factual and legal issues, and the [litigant's] ability to investigate the facts and present his claims," *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (citations omitted), this Court notes that the nature and complexity of the issues presented by this case and the anticipated discovery (both from a logistical and sensitivity perspective) suggest that the appointment of counsel will assist in the just and speedy resolution of this action.  Fed. R. Civ. P. 1; D.C.COLO.LAttyR 15(f).  In addition, although Mr. Aigner has signed the papers, it is not clear whether Mr. Lerner is serving as his *de facto* legal representative—which would not be permitted. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (observing that the competence of a layman is "clearly too limited to allow him to risk the rights of others").  For these reasons, the Motion for Appointment of Counsel is **GRANTED**.

### CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)       The Recommendation [Doc. 35] is **ADOPTED**, subject to the analysis herein;

(2)       Defendants' Motion to Dismiss [Doc. 21] is **DENIED**;

(3)       Plaintiffs' Second Motion for Appointment of Counsel [Doc. 31] is **GRANTED**;

---

[10] Previously, the Court referred this motion to Judge Neureiter, [Doc. 32], who took the motion under advisement.  [Doc. 33].  The Court now withdraws the referral and addresses the motion.

(4)     The Clerk of the Court **SHALL** select, notify, and **APPOINT** counsel to represent Plaintiffs in this civil matter. **Plaintiffs are advised that the Clerk will select counsel from the Pro Bono Panel; however, there is no guarantee that Panel members will undertake representation in every case selected. The Court cautions that <u>each</u> Plaintiff is responsible for all scheduled matters, including hearings, depositions, motions, and trial**; and

(5)     The Clerk of Court is **DIRECTED** to mail a copy of this Order to:

Gino Lerner, #119107
Bent County Correctional Facility
11560 Road FF75
Las Animas, CO 81054

and

Brian Aigner, #186942
Fremont Correctional Facility
P.O. Box 999
Canon City, CO 81215

DATED:  May 23, 2023                          BY THE COURT:

Nina Y. Wang
United States District Judge