IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00888-SKC-NRN

GINO LERNER,

Plaintiff,

v.

AMANDA RETTING,

Defendant.

---

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 97)

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court pursuant to an Order by Judge S. Kato Crews, ECF No. 100, referring Defendant Amanda Retting's Motion for Summary Judgment, ECF No. 97. Plaintiff Gino Lerner responded to the motion, ECF No. 105, and Defendant filed a reply, ECF No. 107. The Court heard argument on the motion at a hearing on November 15, 2024. ECF No. 108.[1]

The Court has taken judicial notice of the case file and considered the applicable statutes and case law. Now being fully informed and for the reasons discussed below,

---

[1] The Court notes that after the hearing, Plaintiff filed a surreply, ECF No. 109. Plaintiff did not seek leave of court to file this document, and neither the Federal Rules of Civil Procedure nor the Court's Local Rules contemplate the filing of a surreply as a matter of right. Rather, a surreply brief is necessary only if the reply brief raises new material that was not included in the original motion. *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). Plaintiff's surreply does not identified new material in Defendant's reply brief. Accordingly, he is not given leave to file a surreply.

the Court **RECOMMENDS** that the Motion for Summary Judgment, ECF No. 97, be

**GRANTED.**

I.    **BACKGROUND**[2]

    **a. Procedural History**

At all times during the pendency of this case, Plaintiff has been serving an

indeterminate sentence under the Colorado Sex Offender Lifetime Supervision Act of

1998 ("SOLSA"), Colo. Rev. Stat. §§ 18-1.3-1001 et seq. ECF No. 73 at 4. Sex

offenders sentenced for an indeterminate term under SOLSA "shall be required as a

part of the sentence to undergo treatment to the extent appropriate." *See* Colo. Rev.

Stat. § 18-1.3-1004(3). Under SOLSA, Plaintiff must participate in sex offender

treatment  to be considered for parole. *See* Colo. Rev. Stat. § 18-1.3-1006(1)(a) ("In

determining whether to release the sex offender on parole, the parole board shall

determine whether the sex offender has successfully progressed in treatment . . . .").

Plaintiff Lerner and former Plaintiff Brian Aigner originally filed this lawsuit in April

2022 claiming that Defendant Retting and other former Defendants prevented them

from participating in the Colorado Department of Corrections' ("CDOC") Sex Offender

Treatment and Monitoring Program ("SOTMP"), thereby violating their procedural and

substantive due process rights under the Fourteenth Amendment. ECF Nos. 1, 8.

Defendant and former Defendants moved to dismiss the then-operative Amended

Complaint, and Judge Nina Y. Wang[3] ultimately denied the motion on May 23, 2023,

---

[2] All citations to docketed materials are to the page number in the CM/ECF
header, which sometimes differs from a document's internal pagination.
[3] This case was reassigned to Judge S. Kato Crews on January 19, 2024. ECF
No. 81.

concluding that "Colorado law vests SOLSA inmates with a liberty interest in the opportunity to access sex-offender treatment," and that "interest triggers due process protections." ECF No. 43 at 11.

In February 2023, Plaintiff and former Plaintiff began sex offender treatment in SOTMP. ECF Nos. 58, 73 at 4. On June 27, 2023, Defendant and former Defendants sought to dismiss the Amended Complaint for a second time, arguing that Plaintiff and Mr. Aigner's claims were moot because they had been enrolled in treatment. ECF No. 53. While Mr. Aigner agreed that his claims were moot and should be dismissed, ECF No. 58, Plaintiff Lerner filed a Motion for Leave to File Supplemental Complaint, arguing that while he had been enrolled in SOTMP, he had not been properly reinstated into the SOTMP program after being terminated for a violation that had since been expunged, ECF No. 68. Judge Wang subsequently granted this motion, ECF No. 75, and the Supplemental Prisoner Complaint ("Second Amended Complaint" or "SAC"), ECF No. 73, is now the operative complaint.

In the SAC, Plaintiff brings procedural and substantive due process claims only against Defendant Retting. ECF No. 73 at 6–8. Defendant now moves for summary judgment on these claims. ECF No. 97.

### b. Undisputed Facts

The following facts, as relevant to Defendant's Motion for Summary Judgment, are undisputed.[4]

---

[4] In connection with the Motion for Summary Judgment, Defendant filed a Statement of Undisputed Material Facts ("SUMF"). ECF No. 98. Judge Crews' Standing Order for Civil Cases instructs: "An opposing party who contends the fact is 'disputed' must state, in the second column of the page directly opposite the fact in dispute, the nature of the dispute followed by a specific reference to material in the record that

Plaintiff is currently incarcerated at Bent County Correctional Facility. Plaintiff began SOTMP treatment on February 9, 2023. ECF No. 97-1 at 32–36. Prior to starting SOTMP, Plaintiff signed a treatment contract in which he agreed to abide by the rules and requirements of SOTMP. *Id.* The contract states that Plaintiff's continued participation in SOTMP would be subject to ongoing assessment, and that he could be terminated from SOTMP for breaking any rule, including contract violations, failure to progress in treatment, and failure to attend assigned program groups, sessions, and activities. *Id.* The contract also states that if Plaintiff was recommended for termination from SOTMP, he would have the opportunity to appeal that termination at a due process termination review. *Id.*

SOTMP participants are subject to random urinalysis ("UA") screenings. SUMF ¶ 13. On March 11, 2023, Plaintiff had a positive UA for codeine. ECF No. 97-1 at 102 (Denver Reception & Diagnostic Center Incident Report). Plaintiff was not prescribed codeine at the time. ECF No. 97-1 at 104. On March 17, 2023, Plaintiff was charged with Possession or Use of Dangerous Drugs, a Class II violation of the Code of Penal Discipline. ECF No. 97-1 at 108. On March 30, 2023, Plaintiff was convicted of the charge ("COPD Conviction"). SUMF ¶ 19; ECF No. 73 at 4. Plaintiff appealed the COPD Conviction on April 12, 2023. ECF No. 97-1 at 106.

On April 18, 2023, Plaintiff was provided a Notice of Suspension and Right to SOTMP Termination Review ("Notice") stating that he was suspended from SOTMP and

---

supports the position that the fact is controverted." Plaintiff has not done so and has not otherwise indicated that any of the facts listed in the SUMF are disputed. Accordingly, the Court concludes that they are undisputed.

that there would be a "SOTMP Termination Review concerning a recommendation that you be terminated from sex offender treatment." ECF No. 97-1 at 108–12.

The Notice first stated that Plaintiff "failed to demonstrate sufficient progress or motivation to make healthy behavioral changes" because of the positive UA and subsequent COPD Conviction. *Id.* Second, the Notice stated that Plaintiff made statements on four occasions following the March 17, 2023 positive UA which evidenced his failure "to take accountability for your behaviors related to drug use." *Id.* at 109. Third, the Notice recounted behavioral issues that Plaintiff had while participating in sex offense specific treatment at Wisdom Works Counseling Services in 2020 and 2021, and the reasons why he was ultimately "unsuccessfully discharged" from that treatment. *Id.* Fourth, the Notice stated that Plaintiff was placed in Restrictive Housing from March 13, 2023 (the day of the positive UA) through March 29, 2023, and "as a result of being placed in Restrictive Housing," he missed four SOTMP meetings: two curriculum groups, an individual session, and one processing group. *Id.* at 110. The Notice also stated that he missed an additional processing group on March 30, 2023, the day after he returned from Restrictive Housing. *Id.*

Plaintiff requested a termination review hearing, which was held on April 24, 2023 ("Termination Hearing"). ECF No. 99 (Audio Recording of April 24, 2023 Hearing). The Termination Hearing was held before a panel of three individuals who did not have knowledge of the incident prior to the Termination Hearing ("Termination Review Panel"). SUMF ¶¶ 27–28. At the Termination Hearing, Plaintiff presented documentary and testimonial evidence and stated his belief that the March 11, 2023 UA was a false positive. *Id.* He also disputed that he was released from Restrictive Housing on March

5

29, 2023, and stated that he was actually removed from Restrictive Housing on March

30 at 3:30 p.m., after the processing group had already been held. ECF No. 99 at

16:23:42–16:24:01 and 16:40:00–16:41:33. The Termination Review Panel ultimately

determined that Plaintiff would be terminated from SOTMP based on a preponderance

of the evidence indicating that Plaintiff was guilty of rule-breaking behaviors, including

use of drugs, COPD violations, and failure to progress in treatment. SUMF ¶¶ 29–30.

Plaintiff received the written disposition of the Termination Hearing on April 25,

2023 ("Written Disposition"). ECF No. 97-1 at 123. The Written Disposition stated that

the Termination Review Panel would uphold Plaintiff's termination from SOTMP, and

that "[a] preponderance of the evidence indicates that you are guilty of the behaviors

addressed in the termination hearing review." *Id.* It further stated, "You did not follow

treatment contract rules that you agreed to follow when you began treatment . . . . You

violated numerous treatment contract rules that include but are not limited to the

following: (No) Use of drugs or alcohol or abuse of medication. . . . No COPD

violations." *Id.*

On June 29, 2023, Plaintiff's COPD Conviction was expunged because "[t]he

appeal was not processed in the appropriate timeframe." ECF No. 97-1 at 107. The

expungement decision did not address whether Plaintiff had a positive or false-positive

UA. *Id.*

After Plaintiff's COPD Conviction was expunged, Plaintiff attempted to be

reinstated in SOTMP. SUMF ¶ 36. Defendant Retting, who is the Program Administrator

for SOTMP at CDOC, upheld Plaintiff's termination from SOTMP despite the

expungement, stating the following:

6

Mr. Lerner signed the SOTMP treatment contract on 2/9/2023, indicating that he understood the conditions of participation in SOTMP. On 4/18/2023, Mr. Lerner was suspended from SOTMP for violating the treatment contract. He participated in a termination hearing with SOTMP and the recommendation for termination was upheld. Due to the expungement being a procedural issue the termination from SOTMP is maintained as Mr. Lerner did have a positive UA making him amenable for treatment at this time.

SUMF ¶ 37; *see also* ECF No. 97-1 at 17:13–18:2 (Lerner Dep.).

After termination from SOTMP, Plaintiff was advised that he had to complete forms to return to SOTMP treatment, but Plaintiff did not complete the forms because he believed he should not have to due to the expungement. SUMF ¶¶ 38–39; *see also* ECF No. 97-1 at 21:18–22:12.

Plaintiff alleges in the SAC that Defendant, in her official capacity, violated his Fourteenth Amendment procedural and substantive due process rights by failing to place him back in SOTMP after his COPD Conviction was expunged. ECF No. 73 at 6–8.

## II.    LEGAL STANDARDS

### a.  Motion for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, a judge's function at summary judgment is not to weigh the evidence and determine the truth of

the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572

U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the

basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving

party may carry its initial burden either by producing affirmative evidence negating an

essential element of the nonmoving party's claim, or by showing that the nonmoving

party does not have enough evidence to carry its burden of persuasion at trial." *Trainor*

*v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible

evidence may be considered when ruling on a motion for summary judgment. *World of*

*Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving

party has the burden of showing there are issues of material fact to be determined.

*Celotex*, 477 U.S. at 322. That is, the opposing party "may not rest on mere allegations

or denials of his pleading, but must set forth specific facts showing that there is a

genuine issue for trial." *Anderson*, 477 U.S. at 256. Unsupported and/or conclusory

allegations do not establish an issue of fact sufficient to defeat summary judgment.

*MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *see also*

*McVay v. W. Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir. 1987); *Scott v. Harris*,

550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact.").

Conclusory statements based merely on conjecture, speculation, or subjective belief do

not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

"The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52 (1986). However, "[i]f a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

### b. Pro Se Plaintiff

Plaintiff proceeds pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for

the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III.    ANALYSIS

### a.  Fourteenth Amendment Procedural Due Process Claim

Defendant argues that, with respect to Plaintiff's termination from SOTMP, Plaintiff was provided all due process protections that the Fourteenth Amendment requires, and accordingly, that Defendant is entitled to summary judgment on this claim.

The Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012).

"We pose two questions when reviewing a claimed procedural due process violation: '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Taylor v. Sebelius*, 189 F. App'x 752, 759–60 (10th Cir. 2006) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). "Finding such a violation in the prison setting is particularly daunting. However, although an inmate's 'rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime.'" *Chambers v. Colo. Dep't of*

*Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974)). Prisoners "retain some rights under the Due Process Clause," but these rights are "'subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.'" *Beebe v. Heil*, 333 F. Supp. 2d 1011, 1015 (D. Colo. 2004) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). "Where such a right is created, a prisoner is entitled to some minimal due process before he is arbitrarily deprived of it." *Id.* at 1016.

### i. Liberty Interest

The Court must first determine if there is any genuine dispute as to whether Plaintiff has a Fourteenth Amendment liberty interest in not being terminated from SOTMP. Judge Wang has already determined that Plaintiff has a liberty interest in *accessing* SOTMP. *See* ECF No 43 at 11 ("Colorado law vests SOLSA inmates with a liberty interest in the opportunity to access sex-offender treatment."); *see also Tillery v. Raemisch*, No. 16-cv-00282-WJM-STV, 2018 WL 4777411 at *1 (D. Colo. Oct. 3, 2018) ("Plaintiff has a liberty interest in not having his indeterminate sentence become a *de facto* life sentence because he cannot begin [SOTMP]."). However, now before the Court is Defendant's Motion for Summary Judgment on the SAC, which concerns whether an inmate serving an indeterminate sentence under SOLSA has a liberty interest in not being unfairly *terminated from* SOTMP without due process. In her Motion for Summary Judgment, Defendant does not make any argument regarding whether Plaintiff has such a liberty interest. Additionally, while the Tenth Circuit has not yet considered whether such a liberty interest exists, other courts in this District have repeatedly found that it does. *See Stetzel v. Williams*, No. 20-cv-01579-PAB-STV, 2022

WL 1177908, at *8 (D. Colo. Jan. 28, 2022) ("Plaintiff had a liberty interest in not being terminated from the SOTMP without due process."), *report and recommendation adopted*, 2022 WL 897103 (D. Colo. Mar. 25, 2022); *Allen v. Clements*, 930 F. Supp. 2d 1252, 1266 (D. Colo. 2013) ("Inmates sentenced under SOLSA have a liberty interest in not being terminated from treatment without due process."); *Beebe*, 333 F. Supp. 2d at 1012 ("Plaintiff has a powerful interest both in the right to participate in treatment and in being provided due process before being terminated from the treatment program—particularly since his progress in the program must be evaluated before he can be considered for parole."). The Court therefore concludes for the purpose of this motion that Plaintiff has demonstrated the first element of the procedural due process claim and turns to the second element—whether the procedures afforded to Plaintiff were constitutionally sufficient.

### ii.  What Procedures are Due

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id*. In *Wolff,* the Supreme Court held that inmates are entitled to due process protections in disciplinary hearings that could result in the forfeiture of good-time credits. 418 U.S. at 557. Under *Wolff*, an inmate must be provided: (i) advance written notice of the charges against him; (ii) the ability to present evidence in his defense, including the right to call witnesses (unless prohibited due to security

reasons); (iii) the right to a neutral and detached hearing body; and (iv) a written statement of the hearing body's reasons for its decision, supported by some evidence in the record. *Id.* at 559–72.

Courts in this District have repeatedly applied *Wolff*'s procedural requirements in the context of an inmate's procedural due process challenge to an SOTMP termination. *See Firth v. Shoemaker* ("*Firth I*"), No. 09-cv-00224-MSK-MJW, 2011 WL 4501971, at *3 (D. Colo. Sept. 29, 2011) (citing *Wolff*, 418 U.S. at 559–572), *aff'd*, *Firth v. Shoemaker* ("*Firth II*"), 496 F. App'x 778 (10th Cir. 2012)); *Crosby v. Heil*, No. 10-cv-00951-WJM-MEH, 2011 WL 7485387, at *18 (D. Colo. Oct. 3, 2011), *report and recommendation adopted*, 2012 WL 850597 (D. Colo. Mar. 12, 2012), *aff'd*, 499 F. App'x 764 (10th Cir. 2012); *Stetzel*, 2022 WL 1177908, at *8. Although the Tenth Circuit has not expressly adopted the *Wolff* requirements in the context of an SOTMP termination,[5] it has held that these requirements apply when an inmate brings a procedural due process claim challenging his classification as a sex offender. *See Mariani v. Stommel*, 251 F. App'x 536, 540 (10th Cir. 2007) (agreeing with *Neal v. Shimoda*, 131 F.3d 818 (9th Cir.1997), that the *Wolff* requirements apply to the procedural due process requirements that must be afforded to an inmate challenging his classification as a sex offender); *Fistell v. Neet*, 125 F. App'x 219, 224 (10th Cir. 2005) ("an inmate whose classification as a sex offender implicates a liberty interest, is entitled to" *Wolff*'s procedural protections); *Gwinn v. Awmiller*, 354 F.3d 1211, 1218–19 (10th

---

[5] While *Firth I* held that *Wolff*'s procedural protections applied to an inmate's liberty interest in continuing SOTMP treatment, and *Firth II* affirmed that these protections had been satisfied, *Firth II* explicitly did not consider whether *Wolff* was the appropriate standard of procedural due process because that question had not been preserved on appeal. *See Firth II*, 496 F. App'x at 785.

Cir. 2004) (holding that because a plaintiff's "classification as a sex offender reduced the rate at which he could earn good time credits and implicated a liberty interest," he was entitled to *Wolff*'s procedural protections). Plaintiff has not argued that the *Wolff* factors do not apply. This Court accordingly applies the *Wolff* factors to Plaintiff's procedural due process claim here.

Plaintiff has not disputed, and the evidence in the record supports, that the procedures afforded to him in the termination process have satisfied the first three *Wolff* factors. The April 18, 2023 Notice provided Plaintiff with advanced written notice of the charges against him. *See* ECF No. 97-1 at 108–13. At the Termination Hearing, Plaintiff was allowed to present evidence in his defense and was given the opportunity to call witnesses. *See* ECF No. 99. Plaintiff has not disputed that the Termination Review Panel was neutral and detached. *See id.* Regarding the fourth *Wolff* factor, Plaintiff received a written statement of the Termination Review Panel's reason for its decision. *See* ECF No. 97-1 at 123–24. The Court now considers whether this decision was supported by some evidence in the record.

### iii.  "Some Evidence" Standard

Determining whether "some evidence" supported the decision "'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Jordan v. Wiley*, 411 F. App'x 201, 210 (10th Cir. 2011) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453–56 (1985)). A reviewing court may uphold a decision "even if the evidence supporting the decision is

'meager.'" *Howard v. U.S. Bureau Of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996)). A decision would violate due process if the record were "so devoid of evidence that the [defendant's] findings were without support or otherwise arbitrary." *Hill*, 472 U.S. at 446.

Courts evaluate whether "some evidence" was present in the record before the disciplinary board *at the time that the decision was made*. *See Terry v.* Jones, 259 F. App'x 85, 87 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008); *see also Tyler v. Hooks*, 945 F.3d 159, 171 (4th Cir. 2019) (considering evidence "before the warden at the time of his decision"); *Garza v. English*, No. 18-3226-JWL, 2018 WL 6570493, at *6 (D. Kan. Dec. 13, 2018) (collecting cases in which courts disregarded additional evidence not presented at the time of the disciplinary hearing when deciding whether "some evidence" supported the decision); *Galvan v. Vaughn*, No. CV 12-1026 MV/LFG, 2013 WL 12335256, at *6 (D.N.M. Apr. 5, 2013) (only considering evidence in the record at the time of the disciplinary hearing). For example, in *Terry v. Jones*, an inmate alleged that his procedural due process rights had been violated in prison disciplinary proceedings after he had been found guilty of possessing drugs not prescribed by medical staff, and lost 365 good time credits as a result. 259 F. App'x at 86. At the disciplinary hearing, evidence had been presented that "a prison official found two packs of rolling papers, two bags of tobacco, two Stacker 2 pills, one Neurontin, one Baclofen, one small white pill, and one small pink pill in [the inmate]'s cell." The inmate argued "that he was factually innocent" because he had a prescription for the Neurontin and Baclofen pills and possibly had prescriptions for the other unidentified pills. The Tenth Circuit found that some evidence supported the conviction.

> We uphold a revocation of good time credits where there is some evidence to support the disciplinary findings at the time. Even if [the inmate] could now prove he had prescriptions for the unidentified pills, that evidence was not on the record when the prison officials were making their decision to revoke his good time credits. In fact, there was evidence on the record that a prison nurse "stated she could not [identify] the small white or pink pill" and that [the inmate] "did not have a prescription for these pills." As in *Hill*, we need only examine whether the prison officials found some evidence to support their disciplinary findings. Here, the record at the disciplinary hearing did not include [the inmate]'s actual prescription information. However, prison officials did have two reporting officers' statements of items they discovered during a "shakedown" of Petitioner's cell and the nurse's statement. These statements meet our standard of some evidence. The findings were not arbitrary.

*Id.* at 87.

Here, Defendant argues that the decision to terminate Plaintiff from SOTMP was supported by at least some evidence in the record. Defendant contends that numerous reasons supported Plaintiff's termination from the program, including Plaintiff's "lack of progress in treatment," "fail[ure] to meet the program expectations," drug use, violation of the SOTMP treatment contract, the positive UA, his "failure to utilize techniques learned in SOTMP, "evidence of a pattern of behavior linking to his previous termination at Wisdom Works in the community," "failure to take accountability for his actions," and his COPD Conviction. *See* ECF No. 97 at 10–11.

The Notice gave four general reasons why Plaintiff was being terminated from SOTMP. First, the Notice cited Plaintiff's positive UA and subsequent COPD Conviction. At the time of the hearing and when the Notice was issued, Plaintiff's COPD Conviction had not yet been expunged. Second, the Notice stated that, following the positive UA, Plaintiff made statements on four occasions which evidenced his failure "to take accountability for [his] behaviors related to drug use":

16

On March 23rd, 2023, your SOTMP primary clinician and a second SOTMP clinician met with you in the multipurpose room in unit 3 while you were in Restrictive Housing. During this individual session, you were given the opportunity to take accountability for your behaviors related to drug use. In this discussion, you stated that you did not know why the drug test came back positive for Codeine and stated, "I have not taken anything" and "I never take pills from no one else." You also stated, "I can't remember the last time I did drugs . . . The last time I remember doing drugs is right before I got arrested."

To continue, on March 28th, 2023, your SOTMP primary clinician met with you to complete the interview portion of the Initial Sex Offender Treatment Intervention and Progress Scale (SOTIPS) assessment. At this time, you were also given a second opportunity to take accountability for your behaviors related to drug use. You continued to state that you did not know why the drug test came back positive for Codeine.

On April 3rd, 2023, you returned to Track I curriculum group. During group, you shared that you have been convicted of a COPD offense and that you are currently appealing this conviction. At this time, you stated that you "did not take any drugs or anything from anyone." You also stated that you believe the positive drug test is a false positive and that there is a possibility that the drug test results showed positive due to a family history of medical conditions and appeared to place considerable blame on this possibility. Mr. Lerner, this was your third opportunity to take accountability for your behaviors related to drug use.

On April 6th, 2023, you returned to Track I processing group. During group, you once again stated that you have not used drugs in 20 years and that you do not know why you produced a positive drug test and that you believe it is a false positive. During group, your peers gave you feedback about accountability and the benefits of telling the truth. SOTMP clinicians also challenged you by stating that individuals usually do not get convicted of a COPD offense if there are inaccuracies in the testing or information they have. You then identified that if it was true that you used drugs. it would be "devastating" for both you and your family. Mr. Lerner, you stated, "If I did [it] I would take accountability." Mr. Lerner, this was the fourth opportunity to take accountability for your behaviors related to drug use and you continue to deny this to be true.

ECF No. 97-1 at 109. Third, the Notice recounts Plaintiff's prior behavioral issues in sex offender treatment via a different community provider (Wisdom Works) in 2020 and 2021. Fourth, the Notice states that Plaintiff missed multiple SOTMP groups and

sessions when he was placed in Restrictive Housing immediately after the positive UA, and missed one additional group after he returned from Restrictive Housing. The Notice also states that Plaintiff missed these groups "as a result of being placed in Restrictive Housing."

At the Termination Hearing, Plaintiff primarily argued that the UA was a false positive. He also testified that he was not released from Restrictive Housing until after the March 30, 2023 group session. The written disposition of the Termination Hearing stated that Plaintiff was being terminated from SOTMP, that "[a] preponderance of the evidence indicates that you are guilty of the behaviors addressed in the termination hearing review," and that Plaintiff "violated numerous treatment contract rules that include but are not limited to the following: (No) Use of drugs or alcohol or abuse of medication. . . . No COPD violations." ECF No. 97-1 at 123.

Upon examination of the record, although Defendant argues that Plaintiff was terminated from SOTMP for numerous reasons, it is clear to the Court that each of these reasons is wholly derivative of Plaintiff's positive UA and subsequent COPD Conviction. Indeed, Plaintiff argues that the positive UA was "the catalyst" to the now-expunged COPD Conviction, and Plaintiff's "previous behavior from treatment and his accused lack of amenability to treatment" were not the reason he was terminated. ECF No. 105 at 2. For example, although Defendant argues that Plaintiff's statements (as recounted in the Notice) amount to Plaintiff's failure to take accountability for his actions, these statements arguably boil down to Plaintiff's insistence that the UA was a false positive. The Notice's recounting of Plaintiff being terminated from a prior treatment program before beginning SOTMP cannot by itself amount to "some evidence" that

Plaintiff should be terminated from SOTMP. And the fact that Plaintiff missed SOTMP

meeting while he was in Restrictive Housing appears, again, to be a direct result of

Plaintiff's positive UA, which Plaintiff insists was a false positive, and which was later

expunged.

However, and as unfair as it may seem, Plaintiff does not dispute that he had a

positive UA result and COPD Conviction *as of the date of the Termination Hearing*.

Such conduct would amount to a violation of program rules, which can be grounds for

termination. Ultimately, based on the evidence in the record, there is no genuine dispute

of material fact that, as of the date of the termination decision, some evidence before

the Termination Review Panel supported the decision to terminate Plaintiff from

treatment. *See Crosby*, 2011 WL 7485387, at *18 ("[A] decision to terminate treatment

would only violate due process if the record was devoid of evidence and provided no

support for a board's decision.") (citing *Terry*, 259 F. App'x at 86).

### iv.  Due Process Rights After Termination Decision

The essence of the SAC is that Plaintiff should be reinstated in SOTMP because

his COPD Conviction was expunged. The Court liberally construes this as a claim that

Plaintiff should have been allowed to appeal his SOTMP termination based upon this

change in circumstances.

The Tenth Circuit, citing the procedural protections outlined in *Wolff*, has

repeatedly held that an inmate does not have any due process right to appeal a prison

disciplinary hearing. *See Moncla v. Kelley*, 430 F. App'x 714, 718 (10th Cir. 2011) ("[A]n

inmate lacks a liberty interest in any appeals process; hence no particular process is

due."); *Wilson v. Evans*, 172 F. App'x 227, 229 (10th Cir. 2006) ("[A]n appeal is not

constitutionally required in instances of prison discipline."); *Lowe v. Sockey*, 36 F. App'x 353, 360 (10th Cir. 2002) (citing *Wolff*, 418 U.S. at 564–66, for the proposition that "due process rights inherent in a prison disciplinary hearing" are limited to the four factors previously described)). Applying these cases to the context of SOTMP, courts in this district have concluded that an inmate plaintiff does not have a procedural due process right to appeal an SOTMP termination. *See Stetzel*, 2022 WL 1177908, at *10 ("[T]he failure of [the d]efendants (and AR 700-32) to provide [the p]laintiff an opportunity to appeal or otherwise seek review of the [SOTMP termination review panel's] decision did not violate [the p]laintiff's due process rights.").

Regarding the COPD Conviction, Defendant has argued that although the COPD Conviction was expunged, "the expungement was only for procedural reasons meaning that he still had a positive [UA] screening for drugs he was not prescribed." ECF No. 97 at 12. Defendant argues that even taking into account the fact that the COPD Conviction was expunged, Plaintiff could still be properly terminated based on the positive UA alone. In response, Plaintiff has asserted that he did not use codeine and the UA was a false positive.

The fact that Plaintiff's COPD Conviction was later expunged for procedural reasons does not mean that the underlying positive UA test result was either accurate or inaccurate. However, as explained above, the existence of a positive UA is clearly "some evidence" that supported the termination. Whether Plaintiff actually used codeine is a question of fact that this Court is not able to resolve here. However, this question is not relevant to the precise matter at hand—whether the termination decision, made on April 18, 2023 (72 days before the COPD Conviction was expunged on June 29, 2023),

was supported by some evidence. The fact that the COPD Conviction was later

expunged does not necessarily mean that the underlying conviction was not supported

by some evidence. *See Hayes v. Uraski*, No. 17-cv-184-SMY-RJD, 2019 WL 5910429,

at *5 (S.D. Ill. Feb. 4, 2019) (finding some evidence where a conviction "was expunged

for failure to strictly comply with the department regulations in documenting the dates,

not because the fact-finders did not have some evidence of the infraction."), *report and

recommendation adopted*, 2019 WL 4727697 (S.D. Ill. Sept. 27, 2019); *Williams v.

Korines*, No. 9:16-cv-1157-FJS-TWD, 2018 WL 5729353, at *14 (N.D.N.Y. Aug. 31,

2018) ("Although their decisions were ultimately administratively reversed and

expunged, upon review of the record evidence, the Court finds 'some evidence' to

support [the defendants'] guilty determinations."), *report and recommendation adopted*,

2018 WL 4521204 (N.D.N.Y. Sept. 21, 2018), *aff'd*, 966 F.3d 133 (2d Cir. 2020);

*Winston v. Stewart*, No. 2:12-cv-00235-SWW, 2014 WL 1877403, at *5 (E.D. Ark. May

9, 2014) (finding some evidence to support inmate plaintiff's initial conviction for a

disciplinary charge even though the charge was later reversed for procedural reasons),

*aff'd sub nom. Winston v. Petty*, 565 F. App'x 577 (8th Cir. 2014). Ultimately, the

Termination Review Panel considered Plaintiff's positive UA, determined that he was in

violation of SOTMP rules, and upheld his termination.

### v. Plaintiff Has No Additional Due Process Rights Based on CDOC Regulations

Lastly, to the extent that Plaintiff argues that he must be reinstated in SOTMP

pursuant to CDOC administrative regulations, this argument cannot succeed. Plaintiff

points to CDOC Administrative Regulation ("AR") 150-01, which provides in part:

> When an offender is found not guilty or a conviction is reversed on an appeal, the DOC will attempt to restore the offender to the greatest extent practicable all programs, privileges, and assignments lost during any period where such were suspended or removed as a result of the charges against them.

AR 150-01(IV)(F)(10)(g). The Court notes that this text contains permissive language and only requires the CDOC to "*attempt* to restore the offender *to the greatest extent practicable.*" *Id.* (emphasis added). More fundamentally, however, "prison policies or guidelines establishing additional procedures to be employed in disciplinary proceedings, such as the appeal procedure . . . do not create a liberty interest protected by the Due Process Clause even if written as mandatory directives." *Burnett v. Leatherwood*, No. CIV-10-769-M, 2011 WL 4538443, at *4 (W.D. Okla. Aug. 8, 2011) (citing *Muhammad v. Wiley*, 330 F. App'x 165, 167 (10th Cir. 2009)), *report and recommendation adopted*, 2011 WL 4553114 (W.D. Okla. Sept. 29, 2011), *aff'd*, 557 F. App'x 739 (10th Cir. 2014). Accordingly, AR 150-01 does not impose additional procedural due process requirements upon Defendant (beyond those outlined in *Wolff*).

Accordingly, the Court must recommend that Defendant's Motion for Summary Judgment be **GRANTED** with respect to Plaintiff's procedural due process claim.

### b.  Fourteenth Amendment Substantive Due Process Claim

"'[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Doe v. Heil*, 533 F. App'x 831, 841 (10th Cir. 2013) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). "The Supreme Court has described two strands of the substantive due process doctrine. One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of

governmental power that shocks the conscience." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (citation omitted).

"A fundamental right or liberty interest is one that is 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Chavez v. Martinez*, 538 U.S. 760, 775 (2003)). "'[T]he Fourteenth Amendment forbids the government to infringe fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). The Supreme Court has "required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Washington*, 521 U.S. at 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). Plaintiff has not asserted that such a fundamental right or liberty interest is at issue here.

Regarding the second strand of the substantive due process doctrine, "the ultimate standard for evaluating a substantive due process claim is whether the challenged government action 'shocks the conscience' of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)). In evaluating substantive due process claims, courts must be mindful of "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that [42 U.S.C.] § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *Id.* (citing *Uhlrig*, 64 F.3d at 573). The Tenth Circuit has held that "ordinary negligence does not shock the conscience" and "permitting unreasonable risks to continue is not necessarily conscience shocking." *Id.* (citations omitted). Rather, a

plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* (citations omitted).

The situation in this case can be summarized as follows. Plaintiff was terminated from SOTMP based on a COPD Conviction for a positive UA. Despite the later expungement of the COPD Conviction, Defendant decided that Plaintiff would not be reinstated in SOTMP. In evaluating Defendant's motion for summary judgment on the substantive due process claim, it is not the role of this Court to decide whether Defendant's choice was wrong or misguided. Instead, the Court must decide whether Defendant's actions truly "shock the conscience."

The Court looks to Judge William J. Martinez's analysis in *Tillery* as particularly instructive. There, an inmate serving an indeterminate sentence under SOLSA brought due process claims against CDOC after lengthy delays in being placed in SOTMP. 2018 WL 4777411, at *1 (D. Colo. Oct. 3, 2018). On cross-motions for summary judgment, it was undisputed that "the only barrier to [the inmate] obtaining treatment [was] CDOC's capacity to provide treatment to all those eligible, including [the inmate,]" and the inmate argued that the only reason that his parole application was deferred was his inability to access SOTMP. *Id.* at *4. When considering the substantive due process claim, Judge Martinez observed:

> The deprivation would without doubt be conscience-shocking if CDOC's administration of the SOTMP did in fact permanently prevent an inmate from ever becoming effectively eligible for parole. Conversely, if CDOC expects that it can provide treatment to all offenders on the wait list within a reasonable period of time, it is less likely that [the inmate]'s substantive due process rights have been impinged or that the wait for treatment would be conscience-shocking. Moreover, the demands of substantive due process may also depend on other factors, including without limitation the minimum period of incarceration and the attendant waiting period before accessing treatment.

*Id.* at *8. Because the inmate had not established "a lack of genuinely disputed facts as

to whether he will indefinitely be deprived of treatment throughout his period of

incarceration," the court denied Plaintiff's motion for summary judgment on the

substantive due process claim. The court also denied the defendants' motion for

summary judgment because

> [the inmate] has presented evidence that CDOC's implementation of [the
> AR which outlines the prioritization of sex offenders for SOTMP
> participation] may result in [the inmate] never being admitted to a treatment
> program and effectively denying any opportunity for parole, in contravention
> of SOLSA. Such a result—so contrary to the express purpose of SOLSA—
> may very well shock the conscience of a federal judge. However, without
> further factual development of the nature of the deprivation, it is premature
> on this record for the [c]ourt to conclude that [the inmate] has not suffered
> a deprivation of substantive due process.

*Id.* at *10.

While *Tillery* concerned access to SOTMP and the instant case concerns

termination from SOTMP, its analysis is informative. Here, while Plaintiff has alleged

that Defendant wrongfully failed to reinstate him in SOTMP after his COPD Conviction

was expunged, there is no evidence in the record indicating that Plaintiff is now unable

to re-enter SOTMP. Plaintiff does not contest that he was advised after termination that

he had to complete forms to return to SOTMP treatment, and that he did not complete

the forms. SUMF ¶¶ 38–39. Indeed, Plaintiff testified at his deposition that after he was

terminated from SOTMP, he had been provided with "Return to Treatment" forms and

had been instructed to fill out the forms in order to return to treatment. ECF No. 97-1 at

21:11–23:10 (Lerner Dep.). However, Plaintiff declined to fill out the forms; he believed

he should have been reinstated because he was "innocent of this charge being

expunged." *Id.* Accordingly, unlike in *Tillery*, Plaintiff has not presented a genuine

dispute of material fact that he has the ability to access SOTMP in the future. Accordingly, the Court cannot find that Defendant's actions "shock the judicial conscience." For these reasons, the Court recommends that Defendant's Motion for Summary Judgment on the substantive due process claim be **GRANTED**.

## IV.    CONCLUSION

In light of the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment, ECF No. 97, be **GRANTED.**

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 5th day of May, 2025

N. Reid Neureiter
United States Magistrate Judge